IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANA J.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

No. 3:20-cv-00649-HZ

OPINION & ORDER

Kevin Kerr
Kerr Robichaux & Carroll
P.O. Box. 14490
Portland, OR 97293

Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Erin F. Highland
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Dana J. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

**BACKGROUND**

Plaintiff first applied for DIB on February 28, 2014, alleging an onset date of July 1, 2013. Tr. 84. Her first application was denied initially and on reconsideration. Tr. 84. On February 15, 2017, Plaintiff appeared, with counsel, before an Administrative Law Judge ("ALJ"). Tr. 28. On April 24, 2017, the ALJ found Plaintiff not disabled. Tr. 94. In his decision, the ALJ determined that Plaintiff was unable to perform her past relevant work as a charge nurse. Tr. 93. But the ALJ found that there were other jobs that exist in significant numbers the national economy that Plaintiff could perform, including "office helper," "tanning salon attendant," and "hand packager-inspector." Tr. 94.

Plaintiff filed her second application for DIB on September 7, 2017, alleging an onset date of April 25, 2017. Tr. 13. Plaintiff was 56 years old as of her date last insured, December 31, 2018. Tr. 15, 21. Her second application was denied initially and on reconsideration. Tr. 13. On April 18, 2019, Plaintiff appeared, again with counsel, before a second ALJ. Tr. 55. On May 10, 2019, the ALJ Plaintiff not disabled. Tr. 23. In his decision, the second ALJ found that

Plaintiff was able to perform her past relevant work as a charge nurse. Tr. 21. The ALJ also found that Plaintiff had "work skills from past relevant work that were transferrable to other occupations with jobs existing in significant numbers in the national economy," including "medical case manager," "quality assurance nurse," and "admitting clerk, hospital." Tr. 21–22. Plaintiff appealed this decision to the Appeals Council, which denied review. Tr. 1.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred at Steps Four and Five of the sequential analysis. First, Plaintiff argues that the ALJ erred at Step Four in failing to give preclusive effect to the first ALJ's finding that Plaintiff is unable to engage in her past relevant work as a charge nurse. Second, Plaintiff argues that the ALJ erred at Step Five because one of the three jobs identified by the ALJ requires skills from work performed more than 15 years prior to Plaintiff's alleged onset date. The Court agrees.

### I. Step Four

Plaintiff argues that the ALJ erred in finding that she could perform her past relevant work because an ALJ in a prior decision determined that she could not. The Vocational Expert ("VE") at the first hearing stated that Plaintiff had past relevant work as a "Charge Nurse," DOT code 075.137-014, generally performed at the medium exertion level and actually performed by Plaintiff at the medium to heavy exertional level. Tr. 49–50. He based his opinion on Plaintiff's work history report, which described the basic activities that Plaintiff performed in her job as a charge nurse in skilled nursing and long-term care facilities. Tr. 205, 208. In this form, Plaintiff described her job responsibilities as taking care of patients—including providing wound care, assistance with feeding and toileting, diabetic care, medication administration, blood draws, IV starts, admits and discharges, and lifting and transferring patients—along with some supervisory duties. Tr. 208. The heaviest weight she lifted was 100 pounds or more, but she frequently lifted only 10 pounds or less. Tr. 208. She supervised five to seven employees, which took about 20% of her day. Tr. 208. Based on the VE testimony, the ALJ concluded that Plaintiff—who was

limited to light work in her RFC—could not perform her past relevant work as a charge nurse either as actually or generally performed. Tr. 93.

No additional work history report was provided as part of Plaintiff's second application, but the ALJ inquired about Plaintiff's work at the hearing. Specifically, the ALJ asked Plaintiff to describe her work as a charge nurse. Tr. 62. Plaintiff testified that she would conduct physical assessments of new admits, help lift patients into wheelchairs or gurneys, provide wound care, and perform IV starts. Tr. 62. She also stated that she supervised three certified nurses' assistants ("CNAs") "as a rule." Tr. 62. The ALJ pushed for further clarification on the division of labor between Plaintiff and the CNAs, specifically with regard to lifting. Tr. 62. Plaintiff stated that she delegated to the CNAs, who were the "primary person to go to" for lifting. Tr. 62. But she also explained that she did some of the heavy lifting because "there is so much that needs to be done in a time[ly] fashion in that the nurses all help" in long-term care. Tr. 62. The VE in the second hearing also found that Plaintiff had past relevant work as a "Charge Nurse." Tr. 72. But he identified a different DOT code, 075.167-010, for the position, which was classified at the light exertional level. Tr. 72. Based on the VE's testimony, the ALJ concluded that Plaintiff—who was limited to light work—could perform the charge nurse job identified by the second VE.[2] Tr. 21.

The Social Security Act provides that "[t]he findings and decision of the Commissioner . . . after a hearing shall be binding upon all individuals who were parties to such hearing." 42

[2] The Court notes that the ALJ found in his decision that Plaintiff could perform her job as a charge nurse as actually performed. Tr. 21. The Court assumes this was an error and that the ALJ meant to conclude Plaintiff could perform the job as generally performed. Plaintiff's job was actually performed at the medium to heavy exertional level, but Plaintiff's RFC was limited to light work. *Compare* Tr. 16 *with* Tr. 21. The VE, however, testified that this position was generally light work according to the DOT. Tr. 21,72.

U.S.C. § 405(h). The Ninth Circuit recognizes that "[t]he principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). Accordingly, an "administrative law judge's findings concerning [a] claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Id*. at 694. "In the social security context, a previous finding that a claimant is not disabled creates a presumption of continuing nondisability." *Herbert v. Colvin*, No. 3:13-CV-01888-BR, 2014 WL 4956448, at *3 (D. Or. Oct. 1, 2014) (quoting *Scott v. Colvin*, No. 13–CV–1189 W(DHB), 2014 WL 3797491, at *13 (S.D. Cal. Aug. 1, 2014)). A claimant can overcome the presumption by showing a "changed circumstance" indicating a greater disability. *Id*. (quoting *Scott*, 2014 WL 3797491 at * 13). The Commissioner has instructed adjudicators to "adopt [certain faindings] from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding[.]" Acquiescence Ruling ("AR") 97–4(9), 1997 WL 742758 at *3.

Neither party disputes the second ALJ's finding that Plaintiff overcame "the presumption of continuing nondisability under *Chavez* because she developed new impairments after the [first] hearing decision." Tr. 13. Rather, the sole dispute in this case is whether the second ALJ erred in not giving res judicata effect to the specific finding by the first ALJ that Plaintiff could not perform her past relevant work as a charge nurse. The Court finds that he did.

The Ninth Circuit addressed this issue in *Chavez*. In the first hearing, the ALJ found that the plaintiff could not perform his past relevant work as a backhoe operator. *Chavez,* 844 F.2d at 692. But in a subsequent hearing on a new application for disability benefits, the ALJ found that

the plaintiff's position as a backhoe operator did not require excessive standing or lifting such that the plaintiff could return to his past relevant work. *Id.* No reference was made to the first ALJ's findings. *Id.* at 692–93. The defendant argued that res judicata should not apply to the first ALJ's decision that the plaintiff could not perform his past relevant work, arguing that "the claimant's testimony presented 'new and material' evidence to the second judge that the claimant's prior job did not require him to lift heavy objects." *Id.* at 694. The circuit court disagreed, emphasizing that the defendant had not shown that the "new" information was not presented to the first ALJ. *Id.* "In the absence of such a record," the court reasoned, "the second [ALJ] could not reopen the prior determinations concerning the claimant's ability to perform his past relevant work." *Id.* Because the second ALJ failed to give preclusive effect to the determinations of the first ALJ, "his decision was not supported by substantial evidence." *Id.*

Applying *Chavez*, district courts around this circuit have grappled with what constitutes new and material evidence to rebut the application of *Chavez* to a prior determination about a plaintiff's past relevant work. In *Venegas v. Colvin*, for example, the district court concluded that the first ALJ's determination that the plaintiff could not perform any of her past relevant work was entitled to res judicata consideration in her second claim. No. 3:13-CV-00869-JE, 2015 WL 3463650, at *8 (D. Or. June 1, 2015). The court found that "nothing in the record . . . constitutes new and material evidence regarding [the plaintiff's] ability to perform past relevant work." *Id.* at *7. Specifically, the occupations addressed by the first ALJ mirrored those discussed by the second, and there was no evidence that the work records presented to the second ALJ were new or different from those presented to the first. *Id.*; *Cf. Marlon C. v. Saul*, No. 2:18-CV-05409-AFM, 2019 WL 3818202, at *3 (C.D. Cal. Aug. 14, 2019) (finding that a certified earnings record and detailed earnings query which were not available to the first ALJ constituted new

evidence). Other courts, however, have found that VE testimony on its own can constitute new and material evidence under some circumstances. *See Carter v. Astrue*, No. C 08-5095 VRW, 2009 WL 2084446, at *4 (N.D. Cal. July 14, 2009) (finding VE testimony was new and material evidence where the first VE examined and opined on the plaintiff's past relevant work as actually performed and the second VE opined as to the plaintiff's work as generally performed); *Duffy v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08161-PCT-JAT, 2020 WL 1933923, at *3 (D. Ariz. Apr. 22, 2020) (finding that *Chavez* did not apply to a prior ALJ decision regarding the plaintiff's past relevant work where the second ALJ "not only had the benefit of new evidence from the state agency but also different testimony from the VE, which focused more on locating a DOT title that comported with [the plaintiff's] own description of his work rather than the name of the job that [the plaintiff] supplied").

Based on the record, the Court finds no new evidence was presented to the second ALJ. Although the ALJ made further inquiry into the requirements of Plaintiff's past relevant work at the second hearing, the substance of Plaintiff's testimony was nearly identical to the information provided to the first ALJ. *Compare* Tr. 208, 209 (explaining that her job required patient care, including wound care, admits, and IV starts; lifting and transferring patients; and some supervision) *with* Tr. 62 (testifying that she assessed new admits, lifted patients, provided wound care, did IV starts, and supervised CNAs). Indeed, the only difference is that Plaintiff tesitified to supervising fewer people at the hearing than she described in her work history report. *Compare* Tr. 62 (supervising "[t]hree CNAs as a rule") *with* Tr. 208, 209 (supervising five to seven people, which took 20% of her time). But this minor difference does not constitute new and material evidence to rebut the presumption in *Chavez*, especially when the charge nurse position

identified by the second VE—as explained below—appears to entail more, rather than fewer, supervisory responsibilities.

Citing the district court's decision in *Duffy*, the Commissioner argues that the VE testimony alone constitutes new evidence that can justify departing from the prior ALJ's decision. Def. Br. 5. But *Duffy* is distinguishable from this case. In *Duffy*, the first ALJ found that the plaintiff could not perform his past relevant work as a sheriff's deputy, which required medium work. 2020 WL 1933923, at *3. In the second hearing, however, the ALJ concluded that the plaintiff could return to his past work, which was now being described as the DOT position of "jailer" and required only light work. *Id*. The ALJ's conclusion was based on the state agency's classification of the plaintiff's work as a jailer and the VE's testimony that "jailer was a 'more accurate' job description" than sheriff's deputy because of the plaintiff's own testimony about their job duties. *Id.* The district court found that the state agency classification and VE testimony constituted new evidence for reclassifying the plaintiff's past relevant work and, therefore, "did not improperly reconsider the findings of a previous ALJ by simply drawing a different conclusion from the same evidence." *Id.*

Here, by contrast, there was no such testimony from the VE or evidence from the state agency. Rather, without explanation and with no new substantive evidence as to Plaintiff's job duties, the VE identified a different DOT code for Plaintiff's past relevant work as a "charge nurse." Tr. 72. Unlike in *Duffy*, where the position of a "jailer" was identified by the VE as a more accurate job description than the "sheriff's deputy" position identified by the first ALJ, here the job identified by the second VE in this case may be a less accurate job description than the job identified by the first VE. The first VE cited DOT code 075.137-014, which is "Nurse,

Head," as the code for Plaintiff's prior work as a charge nurse. The DOT describes the position as follows:

> Supervises and coordinates nursing activities in hospital unit: Assigns duties and coordinates nursing service. Evaluates nursing activities to ensure patient care, staff relations, and efficiency of service. Observes nursing care and visits patients to ensure that nursing care is carried out as directed, and treatment administered in accordance with physician's instructions. Directs preparation and maintenance of patients' clinical records. Inspects rooms and wards for cleanliness and comfort. Accompanies physician on rounds, and keeps informed of special orders concerning patients. Participates in orientation and training of personnel. Orders, or directs ordering of drugs, solutions, and equipment, and maintains records on narcotics. Investigates and resolves complaints, or refers unusual problems to superior.

Nurse, Head, DICOT 075.137-014, 1991 WL 646746. By contrast, the second VE cited DOT code 075.167-010, "Nurse, Supervisor," as the job that corresponds with Plaintiff's past work as a charge nurse. This position appears to involve even more supervisory tasks and fewer patient-directed tasks than the "Nurse, Head" position:

> Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.

Nurse, Supervisor, DICOT 075.167-010, 1991 WL 646747. Moreover, neither of the state agency decisions on Plaintiff's second application identified "Nurse, Supervisor" as Plaintiff's past relevant work, citing instead the "Nurse, Head" position identified by the first VE. Tr. 107, 121. Given that there was no explanation for the identification of this alternative position by the second VE—and in light of Plaintiff's testimony at the second hearing which, if anything, demonstrated that Plaintiff's job entailed fewer supervisory responsibilities and more patient-

centered activities than previously disclosed—the ALJ's decision was not supported by substantial evidence. In effect, the second ALJ here improperly reconsidered the findings of the first ALJ by drawing a different conclusion from the same evidence. Accordingly, the Court finds that the ALJ erred at Step Four in not giving preclusive effect to the prior ALJ's finding that Plaintiff could not preform her past relevant work.

**II. Step Five**

Plaintiff alleges that the ALJ erred at Step Five of the sequential analysis because one of the three jobs identified by the ALJ requires transferrable skills that were acquired from a job she held more than 15 years ago. At step five, the ALJ considers the "vocational factors" of the claimant's age, education, and past work experience, along with the claimant's RFC, to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999). "Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006), as amended (Nov. 7, 2006).

For an individual with Plaintiff's vocational factors—age, education, work experience, and inability to perform past relevant work—and a light RFC, whether they are disabled depends on whether Plaintiff's skills are "readily transferable to a significant range of semi-skilled or skilled work." 20 C.F.R. pt. 404, subpt P, app.2, Rule 202.00(c), 202.07; *see also Lounsburry*,

468 F.3d at 1116–17 (finding under these rules that the plaintiff would be disabled if their skills "are not readily transferable to a significant range of semi-skilled or skilled work"). The regulations define transferable skills as:

> [S]kills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

20 C.F.R. § 404.1568(d)(1). Transferability is more likely among jobs that require the same or a lesser degree of skill, use the same or similar tools and machines, and involve the same or similar raw materials, products, processes, or services. *Id.* at (d)(2). Typically, the agency does not consider work done 15 years or more outside the time they are deciding whether an individual is disabled because "[a] gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." 20 C.F.R. § 404.1565(a).

The sole dispute presented by the parties is whether the ALJ erred in relying on the VE's testimony that Plaintiff could perform the job of "hospital admitting clerk." Specifically, Plaintiff argues that the performance of this position requires skills that she gained more than 20 years prior and such dated skills should not be considered when determining whether she was disabled. Pl. Br. 7. The Commissioner, by contrast, argues that Plaintiff's argument confuses "skills with work setting," and that the VE testified that Plaintiff's skills acquired from her more recent work were transferrable to all three jobs, including the job in a hospital setting. Def. Br. 8.

The Court finds that the ALJ erred in finding that Plaintiff could perform the "hospital clerk" position. Contrary to the Commissioner's argument, the VE appeared to identify the hospital clerk position because of Plaintiff's dated hospital skills. At the beginning of the VE's testimony, he asked Plaintiff whether she had ever worked in a hospital. Tr. 72. Plaintiff

answered that she was an operating room nurse for ten years in the 1980s and quit in the 1990s. Tr. 72. A moment later, when the ALJ asked the VE for a third job that Plaintiff could do, the VE identified the position of "hospital admitting clerk." Tr. 74. The ALJ specifically asked whether it had the "same transferability" as the other two positions. Tr. 74. The VE responded: "Yes, same transferability, and she has—that's why I asked the question about the hospital. She has some dated hospital skills." Tr. 74. At best, this testimony is ambiguous on what transferrable skills were necessary for Plaintiff to perform this occupation. But, as Plaintiff points out, the ALJ never clarified whether Plaintiff could perform this position with *only* the transferrable skills acquired from her more recent nursing positions. Accordingly, the ALJ erred at Step Five.

This error was not harmless. The Ninth Circuit has held that "two occupations do not constitute a 'significant range of work.'" *Maxwell v. Saul*, 971 F.3d 1128, 1131 (9th Cir. 2020). Here, without the "hospital admitting clerk" position, only two occupations remain. Thus, the ALJ has failed to identify a significant range of work, and his finding of not disabled was in error.[3]

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: February 14, 2022.

MARCO A. HERNÁNDEZ
United States District Judge

[3] Plaintiff does not argue that this case should be remanded for benefits, and the Court finds that a remand for further proceedings is appropriate in this case so that the ALJ can determine whether there is a significant range of work that Plaintiff can perform.